It's going to be a lovely morning. We've got many cases to consider, but I have to give a shout out to my class from the wonderful Cardozo Law School in New York. I told them they needed to come and see what the pros do. So I hope that you'll live up to all of the hype that I've given them. I know my colleagues well. Well, I hope they like Philadelphia, too. I hope so. And Judge Greenaway, I hope you don't mind if I take this opportunity to say hello to my class, which is in Carlisle and State College, who are watching the first two arguments by video. Oh, very good. So lots of fun for all. And we're starting today with the Watkins matter. So council seems to be in place. Mr. Friedman. Come forward, sir. Good morning. I'd like to reserve four minutes. Four minutes. Very well. Thank you. Go ahead, sir. Thank you for hearing this matter. The New Jersey Truth in Consumer Contract Notice and Warranty Act imposes liability whenever a covered writing includes a term that violates a consumer's rights or a seller's responsibility. Pursuant to NJSA 56-8-2.5, consumers have the right to see written prices and sellers have the responsibility to post prices in writing at the point of the offer. Dine equity, beverage offers, are terms included in a covered writing, the menu. Those menus violate consumers' rights to see written prices and the seller's responsibility to post prices at the point of the offer. Therefore, the plaintiff has a claim under TICWNA. What do you seek to recover in this case? Well, there's a few things we seek to recover. We seek to recover statutory damages under the Truth in Consumer Contract Notice. And the statutory damages are $100? Minimum of $100 per violation. All right. The judge in this case... How is that calculated? I'm trying to figure that out. I'm trying to think what this case is all about in terms of ultimate recovery. You've filed a putative class action, right? That's correct, Your Honor. We're also seeking them to change their practices. Sure, I understand that. I understand that. How would damages be calculated on a class basis? Would it be per class member? I believe it would be per class member, correct, Your Honor. I believe that's what the law would afford for each violation. Jim, before you talk about the statute, I'd like to ask you a little bit about the plain language of the statute. Okay. All right. T, C, W, whatever. TCCWNA. Which states, no seller lesser, blah, blah, blah, into any written consumer contract or give or display any written consumer warranty notice, et cetera, which includes any provision that violates any clearly established legal right of a consumer or responsibility of the seller. All right. Now, what is included in the menus here? The offer of the beverage itself. They place beverage offers on the menu itself. The offer, the affirmative act is the offer encompassed in the menu. But putting the beverage on the menu doesn't violate any statute. It's omitting the price, and isn't that an omission, not an inclusion? Well, and that's certainly the way the lower court phrased the omission, omission as an omission. Yeah, I mean, look at the clear language of the statute. It seems to me pretty clear that it's aimed at inclusions, not omissions. Well, when you read in the word omission, which the statute does not have that word in it. Yeah, all right. But activist judges read in words that aren't there. I'm not an activist judge. I look at the words that are there. Well, and the words that are there are seller's responsibility. And that is a word that's in the statute itself. And it states clearly that there's a seller's responsibility here. Not to include any provision, blah, blah. Not to. Not to omit. It doesn't say omit. And the New Jersey legislature certainly knows how to put omit into statutes where it wants omit to apply. And I would agree with Your Honor that they certainly know how to write statutes. And they write this one very expansively, and they've always interpreted it very – the New Jersey courts. The Jersey courts have always interpreted these. How have they interpreted it to include omission? Well, they certainly did that in Boslin v. Warnock Dodge when they specifically stated in Boslin that the – Is that where you had the price list that included $50 that was improperly charged? Yeah, they included – the $50 would have been absolutely proper. Had they included the required itemization fit. So they – if you parse out what's omitted in Boslin, what was omitted in Boslin would have been the required itemization. So they found in that case a possible – I mean, I don't think omission is really the lynchpin. But in that case, they found that that term was missing, and those itemizations, that the required itemization was missing. They found actionable under the – Isn't the way you get to omission through the CFA? I'm sorry? I said, isn't the way you get to omission and respond to Judge Roth's question through the interaction between the CFA and TICWNA? And the CFA creates a clearly established right. It also creates a responsibility using the parlance from TICWNA that you want to employ. And the – that interrelation creates a legally established right. It also responds to the omission question, because whether it's an affirmative act or an omission, it falls within the CFA. TICWNA doesn't create a private right of action in and of itself, right? It creates an action because of a violation, right, of another law. But you dropped your CFA claim, yes. You're right. And it's not so much that we dropped the CFA claim. The – and this is one of the mistakes that the lower court – And what is the consumer fraud? You know, the consumer fraud is if you charge – if you don't put the price in and you charge different prices. No, I would respectfully disagree with Your Honor. The Consumer Fraud Act or sub-parlance of this Consumer Fraud Act is 56-8-2.5, which specifically states that consumers must be able to see the prices at the point of purchase and where the offer is made. Now, that could lead to a CFA claim. But you don't need a fully articulated CFA claim to have a TICWNA claim, and how do we know this? And the lower court didn't have the advantage of Shelton versus Restaurants.com. But we know that now from Restaurants.com, which this court sent over to the Supreme Court of New Jersey to make a ruling on TICWNA. And once they looked at TICWNA and the lower court dismissed the CFA claim because they couldn't make out a complete CFA claim, the Supreme Court said the TICWNA claim still is available. So we know that you do not have to articulate a fully articulated CFA claim to still have a TICWNA claim as long as we have a violation of a law. Should we send over the issue to the New Jersey Supreme Court of whether TICWNA includes, quote, omissions, unquote? I think that... I mean, as a matter of state law, they haven't ruled on it. Well, I think that they have in Boslin. I really do. And I think that this court can come to the same conclusion. And this court really needs to look at what New Jersey does as a legislative body. New Jersey decided that they want to have very strong, you know, consumer protections in New Jersey. And it's always been read to be very expansive and not limiting. The lower court in this case limited the Truth Consumer Contract Notice and Warranty Act when they found that there had to be some kind of conflated relationship between the CFA and TICWNA. And as far as the omission and inclusion, we know in an identical case, Dugan v. Fridays, and an OSI case, these two cases have been heard by three different judicial panels, two lower court judges, and... Well, it's different. Dugan you have paying two different prices. Yeah, but, you know, Dugan... And the judge in this case looked at Dugan, and what he left out of Dugan was... He said there's a secret switch. But Dugan has more than that pled. Dugan also has a pleading of a violation of 8-2.5. And Dugan speaks about that, and speaks about the affirmative act being the offer of the... Reasoning is very conclusory, Dugan's reasoning. It doesn't say a whole lot about the TICWNA claim. It just says you have a viable CFA claim, and we'll let the TICWNA, the Truth and Consumer Warranties Act claim proceed. Well, they tried to knock them both out. But what ended up happening in the appellate division in Dugan, and this omission statement comes up in Dugan very hard, where the appellate division specifically stated on page 20 of the slip opinion, in this case the affirmative act that may trigger TICWNA is the offer encompassed in TGIF's menu. But in Dugan, there was an ascertainable loss, but you've already said you don't need to satisfy all of the elements. So you don't need Dugan. I mean, Boslin, I presume, is, from your standpoint, the beginning and end. It's good law. The Supreme Court has given its imprimatur to the more fulsome discussion in the appellate division, and that's it, no? As far as the omission language, I think restaurants.com also takes you to another level of looking at how the claim survives without a fully articulated CFA claim. I think that there were numerous issues with the lower court's rationale on how they got to the end and the mistakes that were made. And I think that if you look at restaurants.com, it was clear that there wasn't a need to have a CFA claim in total to have a viable TICWNA claim. And I believe that this court needs to be guided by what New Jersey's legislators have articulated in the TICWNA statute. I think what they've articulated is that they don't want provisions in contracts that say, for instance, the buyer will be responsible for any repairs when that's not legal. It will say that the lessor can go onto the lessee's property without permission when that's against New Jersey law. And the discussion, the history that to me seemed most pertinent, was a history that talked about these provisions that were being put into contracts that put burdens on buyers and renters that were illegal under New Jersey law to make sure that that type of provision was not included in New Jersey contracts. Your Honor, I see that my time is up. I'd be happy to answer your question. Please do. If you look at the plain language reading of the statute, omission is not in there. But there is an affirmative act, as I stated earlier, and as Dugan also articulated, when they said that the act that triggers it would be the offer encompassed in the menu. And I think that if you also look at the legislative history of TICWNA, it's there to be expansive. It's there to make sure that there aren't issues regarding these covered writings and that the seller's responsibilities of making sure that they put together a contract that doesn't violate the law, which this one does, ATS 2.5 certainly states that they must post the prices when they make that offer. Now, if they never made the offer in the menu for those beverages, we wouldn't be here. So if the menu didn't mention beverages at all, you'd have no claim? I agree. Okay. Okay, thanks very much. We'll hear from you on rebuttal. Thank you. Mr. Hockman? Good morning, Your Honors. May it please the Court. Rob Hockman for DineEquity, Applebee's, and International House of Pancakes. I want to begin just by explaining I've been using the phrase TICWNA. See, the pronunciation is a little bit different. I just don't want there to be any confusion about that. Nobody wants to say the full name of this statute. I think that's fair. So why don't you put the prices of beverages on menus? You know, this case was dismissed on the pleadings. There isn't a lot of record in there. I can spin out a lot of different theories, but I don't have an answer to that in the record of this case. What I want to begin by saying is the first thing that we should emphasize is that all the tools of statutory construction that are available to this Court indicate that the New Jersey legislature had a specific problem in mind, and it's exactly the problem that Judge Roth indicated earlier. It's the problem of consumers being told that they don't have rights or that sellers don't have responsibilities that they, in fact, have. That's clear from the text, as Judge Roth indicated. What the text reflects is a very common-sense understanding. Consumers look to certain kinds of writings, contracts, warranties, notices that assert rights and responsibilities. They look to these things as a kind of private law. And so they don't flip through the statute books of New Jersey to figure out what they can and can't get out of these contracts. They don't flip through the decisions of the New Jersey State and Federal Courts. They trust that these statements, these affirmative statements of their rights and responsibilities are going to be correct. So if we had a Dugan situation, you'd concede that you'd have a problem? So I think it's important to emphasize why, and I think the answer to that question turns in part on, I just want to touch on, why it is Dugan and Bosland and the Jefferson Loan case which came out our way. So it's not as if there's uniform rulings on this matter. But why it is that those cases aren't as informative as they might seem. Because what they don't do is they're not presented with a case that's a stand-alone Taquana case that requires digging into the tools of statutory construction that the New Jersey Supreme Court and New Jersey law requires. The text and the legislative history, if necessary, to inform the clear text in this case, which I'll get to in a minute. So I think what happened in Dugan, the secret switch, the way I would analyze that textually is as follows. So Dugan's at the bar and she's told, or she gets information in some fashion or another, that a beer costs something like $2. Then she goes and sits down at the restaurant. On the liberal pleading standards, the way the court, I think, understood that is that she was told that she had a right to a beer for $2. She goes to the table, she orders another beer, and she gets a check that says it's 3.25 or something like that. That's a false statement in a writing that you might expect to tell you what rights and responsibilities are with respect to the transaction. Now, Dugan didn't go through it at that level of granularity, at that level of detail, because Dugan, like a lot of the other courts, is focused on a consumer fraud claim and when the consumer fraud claim is present. And that's for good reason. But isn't the CFA broader than the way you're explaining it? And isn't that the point of your adversary, that because the CFA is broader, because the CFA can be interpreted to include both an affirmative act and an omission, that the CFA, working with Tikwana, does give them a claim? I think the CFA is broader than Tikwana. And that's exactly the point. When you don't bring a CFA claim, though, you don't get the benefit of the breath. Because you can't, on this pleading, there is no allegation of ascertainable loss. So there's no actionable CFA claim on this pleading. It's not there. But what would the purpose of Tikwana be if it wasn't to empower plaintiffs that wouldn't be already empowered by the CFA, right? I mean, there must be some purpose. The CFA covers X, right? And Tikwana can't cover the same people, right? That would be duplicative. That wouldn't make any sense, right? So it's got to be that the CFA covers people that wouldn't otherwise be covered by the CFA. Tikwana, I'm sorry, covers people that wouldn't otherwise be covered by the CFA. But there's an interaction between them. I think they work side by side, Your Honor. And I think the way they work is, the specific problem that the New Jersey legislature was interested in, these circumstances where you have affirmative statements, misstatements of rights and responsibilities, that was a special problem to the New Jersey legislature. And they didn't want those plaintiffs to bear the burden of proving an ascertainable loss. So even when they don't have an ascertainable loss, if you've been told something that isn't true, and Bosland is a good example of this, right? What happened in Bosland? You have a form that has a very clear regulation when a car is sold about itemization of fees. One of the line items is the registration fee. That's a third-party fee. You're going to have to pay that no matter what. You've got to register your car. It's a fee to the government. You have to pay that. You're also entitled, as the seller, to charge $20 document preparation fee. That seller in Bosland made that look like it was part of the registration fee. This is important because in Bosland, they emphasize at the outset of the opinion that the itemization requirements exist so that consumers can look at the form and look at the charges and say, this is ridiculous. I don't want to pay for this document preparation fee. And there could be negotiation over it. But if you make it look like it's a third-party fee, it's a fee you've got to pay either way, you're misstating what the negotiation would be about. So that's a situation where you might not have an ascertainable loss because the fee was something they're entitled to charge. But nonetheless, you've been told something false that inhibited the kind of rights, inhibited your ability to assert your rights in a way that the New Jersey legislature wants you to have, doesn't want sellers to be able to tell you things that are false that inhibit your ability to assert your rights. I get that totally. But the CFA talks about not just a, to use the language that Judge Roth used a few moments ago, it's not just a clearly established legal right of a consumer. It's also or the responsibility of a seller, lessor, et cetera, as established by state or federal law. So why wouldn't the omission here fall within the responsibility language? I think that the, because it's because the statute, this is Taquana, not the CFA, just to be clear about this. Taquana does not cover omissions at all. If they wanted to, they would have, it could easily enough have said so. I mean, remember, the CFA does specifically refer to omissions. This says, includes any provision that violates any clearly established right of a consumer or responsibility of the seller. It could have gone on and said, or omits information that the consumer has a right to have or the seller has the obligation to provide. But it doesn't say that. And omissions are understood, well understood in the law, to be a different kind of wrong. But if responsibility arises under Taquana, right? And one of those responsibilities, as it is articulated in the CFA, is announcing to consumers what prices they have to pay for certain consumer products. Why doesn't it fall within that? Because that's not the kind of responsibility they were concerned with. And that's, if it's not clear enough from the includes any provision language, the legislative history just absolutely drives it home in no uncertain terms. Seller's responsibilities can mean lots of things. One of the examples given in the legislative history is the responsibility of, say, a lessor to provide the kind of environment and avoid negligence in providing an environment that might cause harm to a lessee. That's a responsibility, but it's not an omission in a document. That's a different kind of problem. So there's plenty of ways to give content to seller's responsibilities that doesn't involve turning Taquana into a disclosure statute that it was never intended to be. And I don't ordinarily read from legislative history. This is at the Joint Appendix at 82. I'm going to do so here because, to be honest, I can't say it better than the New Jersey sponsors of this legislation said it roughly 30 years ago. And we'll walk through it. If this goes to the Supreme Court, will you quote this to Justice Scalia? Ha ha ha ha! I would stand in the wind of some strong headwinds, but I would do it. And remember, happily, the New Jersey Supreme Court has a different view on statutory justification than does Justice Scalia. And I'm not sure Justice Scalia speaks for all nine here, Honor. But it begins, far too many consumer contracts contain provisions that clearly violate the right of consumers. They're saying it right there. It's stuff that's in there that matters. Even though these provisions are legally invalid or unenforceable. In other words, they're not worth the paper they're written on in fact. But as a practical matter, their very inclusion in a contract deceives a consumer into thinking they are enforceable. There's a specific deception that they're targeting here. And the punchline, why this matters so much? And for this reason, the consumer often fails to enforce his rights. In other words, this is a different kind of harm, more severe than the typical CFA kind of problem and the typical consumer fraud problem. So it's okay to provide a private right of action under these special circumstances that doesn't require a proof of actual loss. If you're actually able to demonstrate damages, you can recover them under Taquana. In fact, Judge Greenaway, your concern about the relationship between these two statutes cuts the other way. Because if plaintiffs are right, then Taquana displaces the CFA for writings. There's no reason to bring a CFA claim for covered writings. Because Taquana gives you everything that you could get under the CFA and more. The CFA kind of ceases to be a robust, the central defender of consumer rights. In New Jersey, nobody thought that. There's no indication in legislative history they thought they were producing that kind of a revolution in the New Jersey consumer protection regime. In the 30 years since this law has been on the books, nobody suggested anything of the sort. Should we ask the New Jersey Supreme Court for its opinion on whether, quote, omissions, unquote, are included? I think not, Your Honor. I think that the information that you have in front of you is more than sufficient to give you ample indication of how the New Jersey Supreme Court would rule. This case is here on diversity. Diversity in jurisdiction is complete. You have the authority, and you have in previous cases, the travelers case that we cite in our brief, the city of Philadelphia case that we cite in our brief. You have decided important questions of state law that you have admitted, have noted, have not been passed on by the relevant state Supreme Court. And when you have... No, go ahead. And when you have text that's clear, legislative history that's clear, and you have all of the tools available to the New Jersey Supreme Court to make a confident prediction of how they would rule, you should. And that's, I think, part of the obligation of diversity in jurisdiction. It's certainly implicit in the notion that federal courts have the right to resolve cases before them in diversity. You know, I think I've covered most that I wanted to cover. It's obvious. I don't need to go through it. We've raised other arguments in our brief about whether a menu is, in fact, the kind of place that a consumer would look to to determine their rights and responsibilities. Our briefs are sufficient on that, unless you have questions. And likewise, with whether the right to have prices posted on a menu is a clearly established right, which is a slippery term in the statute that we've tried to give some content to, I would just say that, if clearly established means anything, it should mean that you don't use a standalone Tijuana claim in a way that involves the novel application of long-settled statutes. Why is that? Because the phrase clearly established, I think, Your Honor. That's what I'm trying to give content to, that phrase. The clearly established part comes from the legislation that requires that merchandise not be sold without posted prices. No, I understand that the statute's there, but whether that phrase, whether that definition of merchandise applies to food items has been basically not passed on for decades, and so it would be a novel application of that statute in this case, and that's what makes this not a good candidate for determining the right at issue here to be clearly established. If there are no further questions, we respect the request that you affirm the judgment of the district court. Thank you. Thank you. Thank you, Your Honors. A follow-up on a couple of comments that were made, and I think that it's important to understand. I'd like to just read one quote out of Restaurants.com. We also conclude that the legislator enacted the Truth in Consumer Contract Warranty Notice Act to permit consumers to know the full terms and conditions of the offer made to them by the seller or of the consumer contract into which they decide to enter. This is the Supreme Court of New Jersey determining what the legislators meant by this statute. You know, the argument that my counsel made... They also said in Restaurants.com the purpose of the Turquoise is to prevent deceptive practices in consumer contracts by prohibiting the use of illegal terms or warranties in consumer contracts. So what is the illegal term in this contract? Well, first of all, the illegality of the contract in and of itself is the offer of the beverage without posting the price, and that's 8-2.5. But the other improper aspect of this is under a normal contract, a UCC claim, if they sell these beverages for a cheaper price at other points or times in the restaurant and you don't post the price, well, then it should be the most reasonable price, and the reasonable price should be determined on the lowest price paid. You know, I mean, that gets into a loss either way with regard to the beverages in and of themselves. But this is the illegality of the contract, and we know that we have to post prices at the point of the offer because in re Johnny Popper says that. And in re Johnny Popper also specifically states that you don't have to interact with salespeople to find out how much this is. You should be able to know without having to have that interaction. And these are all based on on very concrete principles of this, of 8-2.5 being clearly established. The... Here's what I'd like to know that your adversary brought up. As we look at this interaction, one of the things that I think he said was that the legislature didn't intend Taekwondo to be this sort of super statute that creates a much broader set of rights than had occurred before or had been in existence before. And I'm trying to figure out when we look at Taekwondo and to the extent there's an interaction with the CFA, your adversary is saying, no, you're looking at it the wrong way. It's much more narrow. And I, in my questions, am reading more into it than there is. That's what I really want you to focus on. Well, I think, first of all, the statute's clear that it's in addition to other statutes and laws. And you can certainly have a Taekwondo claim and a CFA claim together, or you can just have a Taekwondo claim, as I argue. The... My counsel argues that, well, this is a super statute. It's not. And as Your Honor posed the question to me before, well, if it's not in the covered writing, it's not available. But there might be a CFA claim available if it's not in the covered writing. There wouldn't be a Taekwondo claim available. And as far as a super statute, the CFA claim gives triple damages. You know, if this was a high dollar figure, like an automobile and Johnny Popper, that's a big number. And that would be triple damages. So, really, the CFA is the super statute if you want to claim it that way. But that's what our legislators in New Jersey have determined. They've decided in New Jersey that we want to have very, very strong consumer protection statutes. And if you're going to be a chain restaurant and come to New Jersey and put menus out there, then you... You don't have to be a chain restaurant. You can be any restaurant, right? Thank you, Your Honor. Absolutely. Any restaurant. Anybody doing business in New Jersey has to comply with... Somebody who lives in New Jersey, their own place. Absolutely. They are. Absolutely. And that's what the New Jersey legislators have stated. I see my red lights on. I don't want to go pass my time. Okay. No. Okay, thank you so much. Thank you. We appreciate it. Counsel, this case was well-argued, obviously, and well-briefed. We appreciate it, and we'll take it under advisement. Thank you, Your Honor.